MONCURE, J.,
delivered the opinion of the court:
*779 The Code, ch. 188, § 3, p. 717, provides, that ! ‘Every writ of fieri facias hereafter issued shall, in addition to the effect which it has under chapter 187, be a lien from the time that it is delivered to a sheriff or other officer to be executed, upon all the personal estate of, or to which the judgment debtor is possessed or entitled (although not levied on nor capable of being levied on under that chapter), except in the case of a husband or parent, such things as are exempt from distress or levy by the 34th section of chapter 49, and except that as against an assignee of any such estate for valuable consideration, or a person making a payment to the judgment debtor, the lien by virtue of this section shall be valid only from the time that he has notice thereof. This section shall not impair a lien acquired by an execution creditor under chapter 187.”
The controversy in this case arises under this section of the Code. The subject in controversy is a chose in action, which belonged to Thomas and Richard Crouch. The appellee, Samuel C. Greeuhow, claims a lien upon it under the said section, by virtue of sundry writs of fieri facias, issued after the Code took effect, upon a judgment obtained by him against Edwin Earrar and the said Thomas and Richard Crouch. The appellant claims a lien upon it by virtue of a deed of trust executed by said Thomas and Richard Crouch, and duljr recorded, whereby they assigned the subject to him, in trust to secure the payment, as -therein 'x'mentioned, of certain debts of theirs, named in a schedule annexed to the deed. And though the said Greenhow’s execution lien is prior in time to the appellant’s deed of trust lien, yet the appellant insists that the latter is prior in right, inasmuch as he is an assignee for valuable consideration and without notice, within the meaning of one of the exceptions contained in the section giving the execution lien as aforesaid. The question is, therefore, narrowed down to this, whether he is such an assignee or not?
The deed of trust is certainly an assignment of the subject in controversy, and the appellant is therefore an assignee thereof. He is also an assignee without notice. He denies notice in his petition and answer, and there is no proof or even averment of such notice in the record. Is he an assignee for valuable consideration?
A pre-existing debt is, of itself, a valuable consideration for a deed of trust executed for its security; which deed, if it be duly recorded, and was not executed with a fraudulent intent, known to the trustee or the beneficiaries therein, will be valid against all prior secret liens and equities and all subsequent alienations and incum-brances. It is not necessary to the validity of the deed, that it should be executed by the trustee or the beneficiaries, or even that they should know of its existence before the intervention of subsequent claims. The deed being apparently for the benefit of the creditors therebjr secured, their acceptance of it will be presumed until the contrary appears. If any of them refuse it, their refusal will relate back to the date of the deed, and avoid it ab initio as to them. A debtor, even though he be in failing circumstances, may lawfully prefer one creditor to another, and make a valid deed of trust for that purpose. These principles are now well settled in this state, as the following cases sufficiently show : Garland v. Rives, 4 Rand. 282; Skipwith’s ex’or v. Cunningham, *&c., 8 Heigh 271; McCullough, &c. v. Sommerville, Id. 415; Lewis v. Caperton’s ex’or, &c., 8 Gratt. 148; Phippen v. Durham, &c., Id. 457; Dance, &c. v. Seaman, &c., 31 Id. 778; and Wickham, &c. v. Lewis Martin & Co., 13 Id. 427. In the last case Judge Daniel said (and in this part of his opinion all the other judges substantially concurred), “I think it has been the constant course of the courts in this state to regard the creditors in a deed of trust, made by their debtor bona fide for their indemnity, in the light of purchasers for value.” Id. 437.
It is not proved, nor even intimated, that the debts secured by the deed of trust in this case, are not all bona fide debts; nor that the trustee or any of the creditors participated in, or had notice of an3r fraudulent intent on the part of the grantors; nor, indeed, that there was any such intent, other than may be implied by the existence of the execution lien, which was unknown to the trustee and beneficiaries until after the recordation of the deed. No such intent appears on the face of the deed.
The appellant is therefore an assignee for valuable consideration and without notice, in the general sense of the terms. Why is he not such an assignee, within the meaning of the exception aforesaid? The terms are therein used without qualification or limitation; and the presumption is, they were intended to be used in their general and well understood sense. There is nothing in the nature of the case which requires that they should be construed in a different and more restricted sense.
It is argued by the counsel for the appel-lee, that the additional effect given by the Code to the writ of fi. fa. was intended as a substitute for the remedy formerly afforded by the writ of ca. sa. therebjr abolished; and that as the effect of the lien afforded by the execution of the latter writ was to override subsequent alienations, so the delivery of the former to the sheriff *for execution should have ihe same effect, except so far as an intention to the contrary may plainly appear in the Code; and that it does not plainly appear that such an assignment as that under which the appellant claims, comes within the meaning of the exception.
It is true, that the additional effect given by the Code to the writ of fi. fa. was intended as a substitute for the remedy formerly afforded by the writ of ca. sa. But it was not intended to be coextensive with that remedy in all respects. On this subject the revisors observe, “We will not *780 undertake to say that the remedies -now proposed to be substituted in the place of process to take the body for debt, will in every possible case attain for the creditor everything that he can now attain by means of that process; but we express the opinion, without hesitation, that in cases generally, the rights of creditors will be better protected by the measures proposed than by those for which they are substituted.” Code, p. 716, note.
The two remedies differ in many respects. The new remedy is more beneficial to the creditor in some respects and less so in others, than the old. It gives a lien on all the personal estate of the debtor from the time that the writ of fi. fa. is delivered to the officer for execution, subject billy to the exceptions enumerated. The lien does •not depend upon the levy of the writ, but continues to operate after the return day and until the right of the creditor to levy any execution upon his judgment ceases, or is suspended by a forthcoming bond being given and forfeited, or by a super-sedeas or other legal process. Code, p. 717, § 4; Puryear v. Taylor, 12 Gratt. 401.
On the other hand, the ca. sa. was a lien only from the time of its execution, and then only a qualified and conditional lien. It was not a lien at all upon personal estate until by the act of March 2, 1821, it was declared, that “every writ of capias ad satisfaciendum shall bind the property of the goods of the party *against whom the same is. sued forth, from the time that such writ shall be levied.” Sess. Acts, p. '35. ch. 34, § 4. It is at least doubtful whether even that act made it a lien on choses in action. The languag-e of the act is almost identical with that which declared that no writ of fieri facias, &c., “shall bind the property of the goods against which such writ is sued forth, but from the time that such writ shall be delivered,” &c. 1 Rev. Code, p. 529, l 13. If the word “goods,” occurring in each of these two acts in pari materia, be construed to have the same meaning in each, as would seem to be reasonable, then, as it clearly did not embrace choses in action in the latter, so it did not in the former. Again: the lien of the ca. sa. was dependent for its effect upon the debtor’s taking the oath of insolvency. Until then, the lien was inchoate and conditional; and if the debtor died, or escaped, or was discharged, without taking the oath of insolvency, the lien was thereby determined. A ca. sa. was rarely resorted to until a fi. fa. had been tried without effect. So that it was only in the rare cases in which a ca. sa. was issued and executed, and the debtor took the oath of insolvency, that the creditor had the benefit of the ca. sa. lien. Effect might be given to such a lien against persons claiming by voluntary act of the debtor, without doing injustice to them; for they could not well be assignees without notice while the debtor was in custody. No effect was given to it against liens acquired by other creditors by act of law while he was in custody. Jackson v. Heiskell, 1 Leigh 257; overruled by Foreman v. Loyd, 2 Id. 284.
The writ of fi. fa. is generally issued on a judgment, and always, in the absence of special direction to the clerk to the contrary. It is to this execution, thus almost always issued upon a judgment, that the Code, ch. 188, $ 3, has imparted the important additional effect therein> mentioned. In giving to the creditor *this new and extensive lien, it was eminently proper so to guard it as that it should do no injury to the just rights of others. Accordingly, it was given, subject to certain exceptions, which the legislature supposed would have that effect, and which are reasonable, and ought to be fairly construed. Among them is the exception in favor of an assignee for valuable consideration and without notice. The propriety of this exception, so far as it applies to an assignment for value paid at the time, is not denied. Nor will it be denied that it applies to an assignment in discharge of a pre-existing debt. But it is contended that the exception does not apply to an assignment for the securitjr of a pre-existing debt. Such an assignment seems to be as well within the spirit as the letter of the law. It could never have been intended by the legislature that any -assignment for valuable consideration, without notice and duly recorded, should be affected by the secret lien, of an execution which may have issued from the court of a remote county of the state, and been years since returnable. Persons dealing with the execution debtor have no convenient means of informing themselves of sucha lien, andaré not bound to make enquiry. A judgment is a lien on the land of the debtor against subsequent purchasers from him; but the law requires it to be registered for their information. It does not require the lien of a fi. fa. to be registered, because it did not intend that purchasers for valuable consideration and without notice should be affected by such lieu. To give it that effect, would not only be unjust to innocent persons, but would very much obstruct the free circulation of personal property, which the public interest requires and the law favors. It will not do to say that an assignee for the security of a pre-existing debt would only be placed in statu quo, and would therefore not be injured by being deprived of the benefit of his lien. He may have reposed on that security and been thereby prevented *from seeking satisfaction in any other way. At all events, having obtained that security bona fide, he ought not to be deprived of it, and is fairly entitled to all the advantages to which he would be entitled in any other case as a bona fide purchaser for value and without notice.
But it is argued, that if this be the case, a debtor may always avoid the execution lien, by making an assignment for the benefit of-other creditors. And so, it may as well be said that he may, by making an *781 absolute assignment for value paid at the time; or by receiving debts due to him from persons having no notice of the lien. The law has afforded to the judgment creditor as ample remedies as possible, consistently with the rights of others, to enforce the satisfaction of his judgment. It has made his judgment a lien on the whole real estate of the debtor. It has made his fi. fa. a lien from the time that it is delivered to the officer to be executed, on all the personal estate of the debtor on which it is capable of being levied and is actually levied before the return day; which lien overreaches all intermediate alienations and incumbrances with or without notice. And it has, in addition to that effect, made it a lien, from the same time, on all the personal estate of or to which the judgment debtor is possessed or entitled (although not levied on, nor capable of being levied on as aforesaid), subject only to the exceptions mentioned. .And it has provided as ample means as possible for the enforcement of this last mentioned lien, by enabling him to compel the debtor to discover and surrender his estate, and to compel any other person on whom there is a liability by reason of said lien, to discharge such liability. By resorting to. and pursuing with diligence these means, or some of them, the creditor is generally able to prevent an evasion of his execution lieu: and if he be not always able to do so, it is only because ^'rights of others, which the law regards as superior to his, stand in his way.
It is further argued, that as one of the executions of the appellee was in the hands of the sheriff, and in full force when the deed of trust was recorded, and when the appellee filed his petition in this case, the lien of that execution is therefore superior to the lien of the deed of trust, though the lien of the other executions of which the return day had passed, might be inferior thereto. The subject in controversy being a chose in action, is incapable of being levied on under chapter 187 of the Code; and a lien upon it by execution could therefore be acquired only under chapter 188. Under the latter, it is immaterial whether the return day of the execution be past or not. In each case, the lien exists, and to the same extent. It may be proper to observe here, that the deed of trust was recorded before the appellee fileij his petition aforesaid, or the suggestion therein referred to.
It is further argued, that the appellee has at least equal equity with the appellant, and the legal right, or at all events, a prior equity, and ought, therefore, to prevail in this controversy. If it can be said that he has equal equity, it cannot properly be said that he has the legal right. The law under which he claims expressly excepts an as-signee for value and without notice : so that such an assignee and not the execution creditor has the legal right. As between them, there is no execution lien on the subject, and the debtor had the same right to ‘ make the assignment as if the execution never had issued.
The court is therefore of opinion that the appellant is entitled to the fund in controversy ; and that the decree be reversed with costs, and the cause remanded to be further proceeded in accordingly.
Decree reversed.